UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, </br></br> Plaintiff, </br></br> v. </br></br> ANDREW J. KANDALEPAS, </br></br> Defendant. | Case No: 1:18-cv-02637 </br></br> Judge: Ronald A. Guzman </br></br> Magistrate Judge: Young B. Kim |

**PLAINTIFF'S MOTION FOR LEAVE TO
DEPOSE DEFENDANT FOR UP TO 14 HOURS**

Pursuant to the Minute Order entered June 21, 2018 (Docket No. 17) and Federal Rule of Civil Procedure 30, Plaintiff U.S. Securities and Exchange Commission ("Plaintiff" or "SEC"), respectfully seeks leave to depose Defendant Andrew J. Kandalepas ("Defendant" or "Kandalepas") for up to fourteen (14) hours.

I. **INTRODUCTION**

1. From 2010 through at least December 2017, Defendant was the Chief Executive Officer, Chairman of the Board of Directors, President, and Chief Financial Officer of Wellness Center USA, Inc. ("Wellness").

2. The SEC has filed a Complaint alleging that Defendant:

   a. misappropriated approximately $450,000 from Wellness;

   b. pocketed over $136,000 of trading profits by surreptitiously trading hundreds-

1

of-thousands of shares of Wellness stock in his friend's online brokerage account;

c. defrauded investors and potential investors through a series of false and misleading statements in Wellness' SEC filings and press releases;

d. manipulated the market for Wellness stock by entering trades to mark-the-close, by buying and selling Wellness shares for the purpose of increasing trading volume and stabilizing the share price, and by directing friends and business associates to do the same; and

e. retained an unregistered broker-dealer to identify and solicit potential investors and funding sources for Wellness.

3. The SEC has alleged that Defendant:

a. violated sections 17(a)(1), (2), and (3) of the Securities Act of 1933 ("the Securities Act");

b. violated section 10(b) of the Securities Exchange Act of 1934 ("the Exchange Act") and Rule 10b-5 thereunder;

c. aided and abetted an unregistered broker-dealer's violations of Section 15(a) of the Exchange Act; and

d. aided and abetted Wellness' violations of Section 17(a)(2) of the Securities Act.

4. The SEC is seeking an (i) Order of Permanent Injunction; (ii) Order requiring Defendant to disgorge his ill-gotten gains received as a result of the violations including prejudgment interest; (iii) Order imposing appropriate civil penalties; (iv) Order barring and prohibiting Defendant from acting as an officer or director of certain issuers; and (v) an Order

prohibiting Defendant from participating in any offering of a penny stock.

**II.    GOOD CAUSE EXISTS FOR A 14 HOUR DEPOSITION OF DEFENDANT**

5.    "Unless otherwise stipulated or ordered by the court, a deposition is limited to 1 day of 7 hours. The court must allow additional time consistent with Rule 26(b)(1) and (2) if needed to fairly examine the deponent." Fed. R. Civ. P. 30(d)(1)

6.    Good cause exists to allow the SEC to depose Defendant for up to 14 hours. *See* Fed. R. Civ. P. 30(d)(1) at Advisory Comment (2000 Amendment Subdivision (d)).

7.    The deponent is the defendant and a vital witness. Defendant filed an Answer in which he denied many factual allegations in the Complaint. Many of these factual allegations that Defendant denied are about his conduct, knowledge, and scienter over a seven to eight year period.

8.    Because Defendant denied many allegations about his conduct, knowledge, and scienter, the SEC needs to depose him about, among other things,

   a.    Defendant's role as Chief Executive Officer of Wellness from 2010 to 2018;

   b.    Defendant's role as President of Wellness from 2010 to 2017;

   c.    Defendant's role as Chief Financial Officer of Wellness from 2010 to 2018;

   d.    Defendant's role as Chairman of the Board of Directors of Wellness from 2010 to 2018;

   e.    Defendant's control of Wellness' operations from 2010 to 2018;

   f.    Defendant's control of Wellness' bank accounts from 2010 to 2018;

   g.    Defendant's responsibility for Wellness' financial reporting;

3

h. Defendant's control over Wellness' bookkeeping from 2010 to 2018;

i. Board of Director oversight over Wellness' financial reporting;

j. Defendant's withdrawals from Wellness' bank account;

k. Defendant's decision to take a salary;

l. Board approval of Defendant's salary;

m. Defendant backdating a Promissory Note including drafting, reviewing, and approving it;

n. Defendant's employment agreement or lack therefore;

o. Defendant's communications with Wellness' bookkeeper;

p. Defendant's communications with Wellness' auditor;

q. Defendant's communications with investors;

r. Defendant's communications with potential investors;

s. Defendant's communications with Wellness board members;

t. Defendant's communications with executive officers of Wellness' subsidiaries;

u. Defendant's failure to repay the Promissory Note to Wellness;

v. Wellness conducting offerings of its common stock through private placements;

w. Defendant's communications with the unregistered broker-dealer;

x. False and misleading statements in Wellness' Forms 10-K and 10-Q for the period 2013 to 2015 including his role in drafting, reviewing, and approving of such statements;

y. Omissions in Wellness' Forms 10-K and 10-Q for the period 2013 to

4

       2015;

z.     Defendant's ownership of millions of shares of Wellness stock;

aa.    Defendant's causing Wellness to issue over 11 million shares to members of his family, close friends, and business associates;

bb.    Defendant executing over 1,300 trades in Wellness stock in his friend's online brokerage account;

cc.    Defendant accessing funds in a checking account in the name of his friend;

dd.    Defendant pocketing approximately $136,000 in trading profits from trading Wellness stock in his friend's online brokerage account;

ee.    Defendant placing frequent small orders to purchase Wellness stock at or above the current offer price;

ff.    Defendant placing orders near the time of closing of the market to support Wellness' stock price;

gg.    Disclosure of Defendant's beneficial ownership totals;

hh.    Defendant directing shareholders to engage in purchasing shares of Wellness securities in the open market;

ii.    Press releases issued by Wellness;

jj.    Wellness' joint-venture with The Medical Alliance concerning the PL-1000;

kk.    The PL-1000 medical device manufactured by Wellness' subsidiary Psoria-Shield;

ll.    Distribution of the PL-1000;

mm.    Expired FDA registration of Wellness' subsidiary Psoria-Shield;

nn. Sales of the PL-1000;

oo. Revenue for sales of the PL-1000;

pp. Agreements with the unregistered broker-dealer;

qq. The unregistered broker-dealer's solicitation of potential investors in Wellness; and

rr. The unregistered broker-dealer's compensation.

9. Additionally, there are at least 50 Exhibits that the SEC will use during the deposition of Defendant.

10. "The Advisory Committee's Notes to Rule 30(d)(2) contemplate various factors a court may consider in determining whether to order [a deposition of over 7 hours], including . . . , if the examination will cover events occurring over a long period of time, if the witness will be questioned about numerous lengthy documents . . .." *Canal Barge Co. v. Commonwealth Edison Co.*, No. 98 C 0509, 2001 WL 817853 * 4 (N.D. IL July 19, 2001) (granting 3 days (21 hours) for a deposition). *See also, In re: Jimmy John's Overtime Litigation*, 2016 WL 4445769 (N.D. IL August 19, 2016) (allowing 2 days for a deposition).

11. Here, the range of topics, length of time covered by the topics, and number of documents demonstrate good cause for a deposition of up to 14 hours.

## III. DEFENDANT REFUSED TO AGREE TO MORE THAN 7 HOURS

12. Defendant's counsel previously informed the SEC that because the SEC took investigative testimony from Defendant during its investigation, he would not agree to give more than 7 hours of deposition testimony. Investigative testimony serves a different function than deposition testimony. Additionally, Defendant has now filed an Answer denying many allegations in the Complaint. The numerous areas of factual dispute have been identified from

Defendant's denials and need to be explored in a deposition.  (*See* ¶ 8).

13. Furthermore, judging from the investigative testimony, the SEC realizes that it will take more than 7 hours to depose Defendant about the topics listed above and exhibits.

14. The additional time would not constitute an undue burden.  The deponent is the defendant and a vital witness.  The topics are about his knowledge, conduct, and scienter. The additional deposition time is unlikely to be duplicative of other methods of discovery, nor could the information be easily obtained through another discovery method.

15. The SEC will not take more time than is needed for Defendant's deposition.

## CONCLUSION

For all of the reasons stated, Plaintiff U.S. Securities and Exchange Commission respectfully seeks leave to depose Defendant Andrew J. Kandalepas for up to fourteen (14) hours.

Dated: July 9, 2018

        **UNITED STATES SECURITIES
AND EXCHANGE COMMISSION**

By: /s/ Doressia L. Hutton
Doressia L. Hutton (HuttonD@sec.gov)
John E. Birkenheier (BirkenheierJ@sec.gov)
Michelle Muñoz Durk (MunozdurkM@sec.gov)
Kevin A. Wisniewski (WisniewskiK@sec.gov)
175 West Jackson Boulevard, Suite 1450
Chicago, IL 60604-2615
(312) 353-7390
(312) 353-7398 (fax)

*Attorneys for Plaintiff the United States Securities and Exchange Commission*

## Certificate of Service

      I hereby certify that on July 9, 2018, I served **PLAINTIFF'S MOTION FOR LEAVE TO DEPOSE DEFENDANT FOR UP TO 14 HOURS** on all counsel of record through the Court's ECF filing system.

      /s/ Doressia L. Hutton