UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES SECURITIES and EXCHANGE COMMISSION, | No. 18 CV 2637 |
| Plaintiff, | |
| v. | Magistrate Judge Young B. Kim |
| ANDREW J. KANDALEPAS, | |
| Defendant. | August 22, 2018 |

**MEMORANDUM OPINION and ORDER**

The United States Securities and Exchange Commission ("SEC") filed a complaint against Defendant Andrew J. Kandalepas alleging asset misappropriation, financial statement fraud, and violations of the Securities Act of 1933, 15 U.S.C. § 77, and the Securities Exchange Act of 1934, 15 U.S.C. § 78. The SEC moves in advance of the planned deposition of Kandalepas for an extra seven hours of time under Federal Rule of Civil Procedure 30(d)(1). For the following reasons, the SEC's motion is denied without prejudice:

**Background**

The following factual overview is taken from the complaint and is presumed true only for purposes of resolving the current motion. *See Veal v. Kachiroubas*, No. 12 CV 8342, 2014 WL 321708, at *1 n.2 (N.D. Ill. Jan. 29, 2014). Kandalepas served as CEO and Chairman of the Board of Directors of Wellness Center USA, Inc. ("Wellness") from the company's inception in 2010 through at least December 2017. (R. 1, Compl. ¶ 7; see also R. 20, Govt.'s Mot. at 1.) He also served as Wellness's

president and CFO from 2010 until December 2017 and February 2018, respectively. (R. 1, Compl. ¶ 7.) As CEO, Kandalepas exercised control over Wellness, including financial reporting. (R. 1, Compl. ¶¶ 12, 18-19.) Kandalepas withdrew funds from Wellness's bank account and unilaterally set a salary for himself, despite representing to investors that he was not receiving a salary. (Id. ¶¶ 21, 23, 25-26.) Throughout this period, Wellness did not have an independent audit committee or financial director. (Id. ¶ 20.)

Despite findings of weak internal controls, Kandalepas continued to manage Wellness's financial statements. (Id. ¶¶ 21-42.) Kandalepas also conducted common stock offerings through private placements, including to family members and personal friends. (Id. ¶¶ 48, 50.) He used his best friend's brokerage account to pocket the profits from trading Wellness stock and to manipulate the market for the stock. (Id. ¶¶ 50-60, 62.) Further, Kandalepas retained Matthew Mushlin, a formerly registered representative associated with broker-dealers, to solicit investors and "prop up" Wellness's stock price. (Id. ¶¶ 9, 74, 84.)

The SEC seeks leave to depose Kandalepas for up to 14 hours over two days, citing his role as a vital witness, the lengthy time period of seven to eight years to be covered, and the extensive number of exhibits and issues to be addressed during his deposition. (R. 20, Govt.'s Mot. at 3-6.) Kandalepas challenges the motion, arguing that the SEC already had nearly 16 hours over two days to examine him during its investigation preceding the filing of this lawsuit and has not shown "good cause" for an extension beyond the default 7 hours of deposition time set forth in Rule 30(d)(1).

2

(R. 21, Def.'s Resp. Br. at 1-2.) Kandalepas further argues that the requested extension is neither "proportional to the needs of the case" under Rule 26(b)(1), nor "needed to fairly examine the deponent" under Rule 30(d)(1). (Id.)

**Analysis**

Rule 30(d)(1) limits the length of depositions to one day of seven hours. Fed. R. Civ. P. 30(d)(1). The rule also requires the court to "allow additional time consistent with Rule 26(b)(1) and (2) if needed to fairly examine the deponent or if the deponent, another person, or any other circumstance impedes or delays the examination." *Id.* Rule 26(b)(1) permits parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action." Fed. R. Civ. P. 26(b)(1). Under Rule 26(b)(2)(A), "the court may alter the limits . . . on the length of depositions under Rule 30." Fed. R. Civ. P. 26(b)(2)(A). District judges have "broad discretion to tailor discovery narrowly and to dictate the sequence of discovery." *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998).

The parties agree that to extend the amount of time needed to examine a deponent, the party seeking additional time generally must show "good cause." (R. 20, Govt.'s Mot. at 3; R. 21, Def.'s Resp. at 3); *see also Williams v. Fire Sprinkler Assocs., Inc.*, No. CV 15-3147, 2017 WL 1156012, at *2 (E.D.N.Y. March 27, 2017) (collecting cases). Determining whether good cause exists involves a fact-intensive inquiry. *See Williams*, 2017 WL 1156012, at *2; *Exmark Mfg. Co., Inc. v. Briggs & Stratton Power Prods. Group, LLC*, No. 8:10CV187, 2015 WL 1004359, at *2 (D. Neb.

3

March 5, 2015) (citing *Miller v. Waseca Med. Ctr.*, 205 F.R.D. 537, 540 (D. Minn. 2002)). Courts may consider, for example, whether "the examination will cover events occurring over a long period of time," "the witness will be questioned about numerous or lengthy documents," or expert witnesses will be involved. Fed. R. Civ. P. 30(d)(1) advisory committee's notes (2000); *see also Indianapolis Airport Auth. v. Travelers Prop. Cas. Co. of Am.*, No. 1:13-CV-01316, 2015 WL 4458903, at *1-2 (S.D. Ind. July 21, 2015).

> Given the fact-intensive nature of deciding whether to extend time, typically the better practice is for the deposition to go forward to determine how much is able to be covered in the seven hours and, then, if additional time is needed, for counsel to stipulate to extend the deposition for a specific additional time period. If the parties cannot reach a stipulation, then Court intervention may be sought.

*Somerset Studios, LLC v. Sch. Specialty, Inc.*, No. CV 10-5527, 2011 WL 4344596, at *5 (N.D. Cal. Sept. 14, 2011) (internal quotation and citation omitted)). Indeed, in *Mielke v. Standard Metals Processing, Inc.*, No. 2:14-CV-01763, 2015 WL 2152664, at *4 (D. Nev. May 7, 2015), the court denied the plaintiff's motion to extend time where it was "not clear" whether the deposition could be completed within the default time. Mere speculation that more time would be needed did not justify a preemptive time extension. *Id.*

Once the default deposition time has been extinguished, courts may weigh a multitude of factors to determine whether additional time is needed, including whether the desired information could have been gathered in the first seven hours of formal deposition. *See Somerset Studios*, 2011 WL 4344596, at *5; *see also Johnson*

*v. Capital Offset Co., Inc.*, No. 11 CV 459, 2013 WL 1124534, at *2 (D. N.H. March 15, 2013); *Rahman v. Smith & Wollensky Rest. Grp., Inc.*, No. 06 CV 6198, 2009 WL 72441, at *4 (S.D.N.Y. Jan. 7, 2009). For example, when "obstructionist tactics" were used, constant bickering occurred, and the witness "sparred with the lawyers at great length" during the initial deposition, additional time may be warranted. *Am. Hardware Mfrs. Ass'n v. Reed Elsevier, Inc.*, No. 03 CV 9421, 2007 WL 4557820, at *2 (N.D. Ill. Dec. 21, 2007); *see also In re: Jimmy John's Overtime Litigation*, Nos. 14 CV 5509, 15 CV 1681, 15 CV 6010, 2016 WL 4445769, at *1 (N.D. Ill. Aug. 19, 2016) (granting extension for Rule 30(b)(6) deposition even though initial time had not been exhausted because parties had a contentious history).

Here the court declines to grant the SEC additional time to depose Kandalepas until after the SEC exhausts the default time and shows that additional time is needed to fairly examine him. The court has little doubt that Kandalepas is a key witness or that the SEC has a long list of questions and documents covering a multi-year period to discuss with him. Nonetheless, the SEC has not yet shown good cause as to why seven hours is insufficient to depose Kandalepas, particularly since the SEC previously questioned him for many hours in connection with its preliminary investigation. *See George K. Baum Advisors LLC v. Sprint Spectrum, L.P.*, No. 11-2442-JTM, 2013 WL 3166335, at *3 (D. Kan. June 20, 2013) (finding that the deponent's "relative importance to this matter" justified only four additional hours beyond the default time).

As for the 50 Exhibits the SEC plans to use with Kandalepas, the SEC may save time by sharing them with him in advance of the deposition:

> In cases in which the witness will be questioned about numerous or lengthy documents, it is often desirable for the interrogating party to send copies of the documents to the witness sufficiently in advance of the deposition so that the witness can become familiar with them. Should the witness nevertheless not read the documents in advance, thereby prolonging the deposition, a court could consider that a reason for extending the time limit.

Fed. R. Civ. P. 30(d)(1) advisory committee's notes (2000). After the deposition, should the SEC run out of time to question Kandalepas about "numerous or lengthy documents" or subjects, *id.*, or should it show that Kandalepas used obstructionist or other tactics to delay questioning, the SEC may renew its motion, citing specific facts to support a time extension, *see Lassiter v. Hidalgo Med. Servs.*, No. 17 CV 0850, 2018 WL 3377707, at *2 (D. N.M. July 11, 2018) (finding good cause to extend a deposition for four hours after an initial day of testimony where the plaintiff was the principal witness and the complaint alleged a significant number of claims); *Rahman*, 2009 WL 72441, at *4 (extending deposition time after the exhaustion of initial time because the plaintiff was the "best source of information" and there was "no indication that defendants' counsel were inefficient during the first deposition or otherwise acted in bad faith").

The SEC's reliance on *Canal Barge Co. v. Commonwealth Edison Co.*, No. 98 CV 0509, 2001 WL 817853 (N.D. Ill. July 19, 2001), is unavailing here. In that case, the motion to extend the deposition time concerned a Rule 30(b)(6) deposition and the court found that "the factual complexity of discussing repair work performed on 56

barges and the need to refer to numerous accompanying documents justifie[d] authorization to extend the time allowed" for deposition. *Id.* at *1, *4. The moving party in *Canal Barge* compellingly demonstrated the need for an extended deposition because of the 56 discrete contractual matters to be covered during the deposition. As discussed earlier, whether good cause exists depends heavily on the circumstances of each case. While the SEC similarly lists numerous issues to be discussed, the breadth of coverage in this case simply does not rise to the level of that in *Canal Barge*. In any event, the court did not permit the full time extension sought, finding that "the solution to the problem lies in requiring [the moving party] to make efficient use of its time." *Id.* at *4. At this juncture, the court cannot find that the SEC's extended questioning of Kandalepas is needed to fairly examine him. *See* Fed. R. Civ. P. 26(b)(1), 30(d)(1).

## Conclusion

The SEC's motion for leave to depose Kandalepas for up to 14 hours is denied without prejudice.

**ENTER:**

_____
**Young B. Kim**
**United States Magistrate Judge**

7